# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: EDWARD DUDLEY, SR.,** : | Case No. 2:18-cv-1327 |
| Debtor, : | |

| | |
|---|---|
| **MIKE DEWINE, OHIO ATTORNEY GENERAL,** : | Chief Judge Algenon L. Marbley |
| Plaintiff/Appellant, : | |
| v. : | On Appeal from |
| : | Adv. Pro. No. 2:15-02199 |
| **EDWARD DUDLEY, SR.,** : | in the United States Bankruptcy Court |
| : | for the Southern District of Ohio |
| Defendant/Appellee. : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff/Appellant the Ohio Attorney General's appeal from the United States Bankruptcy Court for the Southern District of Ohio's order denying its motion for summary judgment and granting partial summary judgment to Defendant/Appellee Edward Dudley, Sr. (ECF No. 1). The Ohio Attorney General appeals the bankruptcy court's order finding Dudley's alleged liability was not exempt from discharge under 11 U.S.C. § 523(a)(8)(A)(ii). For the following reasons, the opinion of the bankruptcy court is **AFFIRMED**.

## I. BACKGROUND

Ohio Revised Code § 3314 governs the creation of Ohio charter schools, known under the statute as "community schools." Ohio Rev. Code § 331401. Community schools are each required to have a treasurer, or a designated fiscal officer ("DFO"). Ohio Rev. Code § 3314.011(A).

Appellee Edward Dudley, Sr., ("Dudley"), served as a DFO to various community schools throughout Ohio. *In re Dudley*, 582 B.R. 708, 714 (Bankr. S.D. Ohio 2017). The auditor

1

of the state can conduct audits of community schools, and if the audit reveals funds have been expended in violation of the law, the report includes findings for recovery ("FFRs"). *Id.* at 714-15. FFRs assess liability but are not a judgment. *Id.* at 15 n.5. Several of Dudley's community schools were audited and received FFRs. *Id.* at 715. The bankruptcy court found that the FFRs Dudley's community schools received largely fell into the following three categories: 1) insufficient documentation of transactions; 2) transfer of public funds in violation of Ohio Rev. Code § 2921.42(A); and 3) payment of illegal bonuses and stipends. *Id.* at 715. The state of Ohio initiated several lawsuits in state court against Dudley and others to reduce the FFRs to judgment, but liability against Dudley has not yet been determined. *Id.* at 712 n.2.

On October 6, 2015, the Ohio Attorney General ("AG") filed its complaint with the bankruptcy court for a monetary judgment with several causes of action against Dudley for: 1) liability of a public official for public money related to the FFRs for $1,33,823.50 plus interest; 2) breach of fiduciary duty, in amount of $1,367.631.71, plus interest and disgorgement of compensation; 3) denial of discharge pursuant to 11 U.S.C. § 727(a)(3); 4) determination that Dudley's liability is excepted from discharge under 11 U.S.C. § 525(a)(4) and 5) determination that Dudley's liability is excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii). *In re Dudley*, 582 B.R. at 716. Dudley's potential liability has not been determined and was not before the bankruptcy court on these cross motions for summary judgment. *Id.* at 716.

Dudley moved for summary judgment, seeking a determination from the bankruptcy court that any potential liability he may have to the state is not excepted from discharge under either 11 U.S.C. § 523(a)(8)(A)(ii) or (a)(4), and that discharge of any debts should not be denied under 11 U.S.C. § 727(a)(3). *In re Dudley*, 582 B.R. at 712. The AG filed a cross motion for partial summary judgment on the question of the funds' exception to discharge under §

2

523(a)(8)(A)(ii). *Id.* On August 17, 2017, the bankruptcy court issued its opinion and order granting in part and denying in part Dudley's Motion for Summary Judgment and denying the AG's Motion for Partial Summary Judgment. *Id.* at 728. On Dudley's motion, the bankruptcy court granted summary judgment for Dudley on two issues: the denial of discharge under 11 U.S.C. § 727(a)(3) and the exception to discharge under 11 U.S.C. § 523(a)(8)(A)(ii). The court denied summary judgment to Dudley on the question of exception to discharge under 11 U.S.C. § 523(a)(4).

The AG now appeals the bankruptcy court's denial of its motion for partial summary judgment on the question of exception from discharge under 11 U.S.C. § 523(a)(8)(A)(ii). (ECF Nos. 1, 3).

## II. JURISDICTION

The bankruptcy court had jurisdiction to decide the parties' cross motions for summary judgment pursuant to 28 U.S.C. § 1334. This court has jurisdiction to hear this appeal of a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

## III. STANDARD OF REVIEW

In reviewing the bankruptcy court's decision, the district court acts as the appeals court and applies a clearly erroneous standard to findings of fact and a de novo standard to conclusions of law. *Harbour Lights Marina, Inc., v. Wandstrat*, 153 B.R. 781, 782 (S.D. Ohio 1993). *See also Brannam v. Huntington Mtge. Co.*, 287 F.3d 601, 603 (6th Cir. 2002); *In re Kuppin*, 335 B.R. 675, 679 (S.D. Ohio 2005). Mixed questions of law and fact are reviewed de novo. *In re Tipps*, 154 B.R. 478, 479 (S.D. Ohio 1993). Questions of statutory construction are reviewed de novo. *Id.* ("the question of whether a person is 'responsible person' for purposes of Section 6672 is a mixed question of law and fact, and thus requires full review under a de novo standard"). *See*

*also United States v. Thomas*, 111 F.3d 426, 428 (6th Cir. 1997) ("[w]e review de novo the district court's interpretation and application of a statute").

Summary judgment is proper if the movant shows "there is no genuine issue as to any material fact" and that they are "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). But "summary judgment will not lie if the ... evidence is such that a reasonable jury could return a verdict for the non-moving party." *Orrand v. West End Land Development, Inc.*, No. C2-09-CV-0212 , 2010 WL 1817333, at *1 (S.D. Ohio 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law*.*" *Anderson*, 477 U.S. at 251-52. But the non-moving party non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir.1993). When ruling on a motion for summary judgment, the court may rely on the evidence called to its attention by the parties; the court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989).

## IV. LAW & ANALYSIS

11 U.S.C. § 523 governs exceptions to discharge of debts. At issue in the AG's appeal is whether any potential liability Dudley has regarding the funds at issue in the FFRs constitute an

"educational benefit" under 11 U.S.C. § 523(a)(8)(A)(ii), and thus excepted from discharge under the statute. 11 U.S.C. § 523(a)(8)(A)(ii) provides:

(a) A discharge under section 727, 1141, 1192 , 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

…

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

…

(A) (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend[.]

11 U.S.C. § 523(a)(8)(A)(ii). The AG must prove by a preponderance of the evidence that the alleged debt in question is covered by the exception to discharge under the statute. *In re Rust*, 510 B.R. 562, 567 (Bankr. E.D. Ky. 2014). *See also In re Barrett*, 487 F.3d 353, 358-59 (6th Cir. 2007). If the AG meets this burden, the debt may only be discharged if Dudley can show repayment of the debt would constitute undue hardship. *Id.* Dudley has not raised an undue hardship defense, so the only question is whether the AG has proven, by a preponderance of the evidence, that Dudley's potential liability under the FFRs falls within § 523(a)(8)(A)(ii)'s exception to discharge. *In re Dudley*, 582 B.R. at 721.

Below, the AG filed its cross motion for partial summary judgment arguing Dudley's FFR liabilities were non-dischargeable "obligation[s] to repay funds received as an educational benefit" under 11 U.S.C. § 523(a)(8)(A)(ii). The bankruptcy court denied the AG's motion and granted summary judgment for Dudley on this question. *In re Dudley*, 582 B.R. at 728. On appeal, the AG relies on three affirmative arguments in favor of its interpretation of "educational

benefit": (1) the ordinary meaning of the terms "educational" and "benefit" includes the funds managed by Dudley (ECF No. 3 at 34); (2) the funds meet the case law definition of "educational benefit" (*Id.* at 35-37); (3) this interpretation would further the statute's purpose, which the AG argues is to preserve educational funds and deter abuse (*Id.* at 38-40).

The Sixth Circuit has laid out a three-step framework for analyzing questions of statutory interpretation. "[F]irst, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance." *Hughes v. McCarthy*, 734 F.3d 473, 478 (6th Cir. 2013) (quoting *Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir.2010)). The Court thus begins with the natural reading of the text. Section 523 does not define "educational benefit." The AG argues the funds at issue fit the ordinary meaning of "educational" because they are allocated for K-12 charter schools and are "benefits" because they came from payments from a government agency, the Ohio Department of Education. (ECF No. 3 at 34-35). But the ordinary meaning of the term "benefit," as Dudley argues, is subject to multiple meanings. (ECF No. 9 at 14).

Dudley argues the bankruptcy court properly applied the canon of statutory construction *noscitur a sociis* and concluded the term "educational benefit" must be read in context with the rest of section, and this Court agrees. A natural reading of the statute includes "the language and design of the statute as a whole." *Hughes*, 734 F.3d at 478. *Noscitur a sociis* represents the idea that "a word is known by the company it keeps." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). Applying this principle, "educational benefit" in § 523(a)(8)(A)(ii) should be given a meaning similar to "scholarships" and "stipends" because it is "grouped in a list" and thus "should be given related meaning." *Id.* Therefore, the bankruptcy court properly concluded that "[a]n educational benefit, then, must be a similar form of financial assistance that provides the

same function to students." *In re Dudley*, 582 B.R. at 724. The remaining sections of § 523(a) also support this reading. Section 523(a)(2) covers debts for "money, property, or services" obtained by fraud or false representation and § 523(a)(4) covers debts "for fraud or defalcation while acting in a fiduciary capacity." Thus, it would render § 523(a)(8) superfluous to apply a broad interpretation to include such debts. *See In re Arnett*, 731 F.2d 358, 361 (6th Cir. 1984) ("a construction of one part or provision of a statute which renders another part redundant or superfluous should be rejected").

The prevailing case law interpretation of "educational benefit" under § 523(a)(8)(A)(ii) also supports the bankruptcy court's opinion. The majority of the case law interpreting this provision of the statute addresses whether student loans come within the meaning of "educational benefit." While there is no authority addressing the precise issue in this case, the case law generally presumes the statute applies only to student debts, where the debtor is the student (or their parent) incurring the debt in furtherance of the student's education. *See, e.g., In re Christoff*, 527 B.R. 624, 629 (B.A.P. 9th Cir. 2015) (referring to § 523(a)(8) as the "student debt exception to discharge"); *In re Merchant*, 958 F.2d 738, (6th Cir. 1992) (finding § 523(a)(8) "was designed to remedy an abuse *by students*") (emphasis added); *In re Homaidan*, 596 B.R. 86, 105 (Bankr. E.D.N.Y. 2019) (noting that even the courts applying a "broad interpretation" of § 523(a)(8) require that the "loans supported or aided the debtor in his or her *pursuit of the benefits of an education*") (emphasis added); *In re McDaniel*, 590 B.R. 537, 549 (Bankr. D. Colo. 2018) ("educational benefit" must be read in context with "scholarship" and stipend" and "scholarship" is a "grant of financial aid to a *student*") (emphasis added); *In re Rust*, 510 B.R. 562, 567 (Bankr. E.D. Ky. 2014) (concluding "a majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on *the stated purpose for the loan when it was*

*obtained*" and holding a loan was an "educational benefit" because its purpose for the student was "only for my educational expenses") (emphasis in original). The funds at issue here do confer no educational benefit on Dudley.

The state cites a number of cases it argues support its interpretation, but these cases all deal with different types of student debts. (ECF No. 3 at 36-37) In *Decena v. Citizens Bank (In re Decena)*, for example, the bankruptcy court found § 523(a)(8)(A)(ii) was intended to encompass more than traditional student loans, but the types of benefits—"such as veteran educational benefits, stipends for teaching assignments, conditional grants, cash scholarships"—were all debts that contained an "obligation to repay funds received if the *student* fail[ed] to comply with certain conditions." 549 B.R. 11, 20 (Bankr. E.D.N.Y. 2016) (internal quotations omitted) (emphasis added). *See also In re Christoff*, 527 B.R. at 629; *In re Essangui*, 573 B.R. 614, 615 (Bankr. D. Md. 2017) (interpreting § 523(a)(8) "requires the Court to consider whether the category of 'nondischargeable student loans' includes any loan made to a student for educational purposes"); *In re Campbell*, 547 B.R. 49, 59-60 (Bankr. E.D.N.Y. 2016) (finding consumer bar loans were not educational benefits under the statute, but found the term should be construed similarly to "loan" and "stipend" and did not decide whether the term could be applied to anything other than student obligations to repay debts for education); *In re Wiley*, 579 B.R. 1, 4 (Bankr. D. Me. 2017) ("[i]n general, 11 U.S.C. § 523(a)(8) excepts a student loan debt from discharge"). As the bankruptcy court notes and the AG himself admits, none of these cases deal with the precise issue in this case. *In re Dudley*, 582 B.R. at 721; (ECF No. 3 at 37). They do not suggest that § 523(a)(8)(A)(ii) can be applied to debts incurred by school treasurers when those debts do not perform a similar function or provide a similar kind of educational benefit to the debtor as student loans.

Because the statutory terms are ambiguous, it was also proper for the bankruptcy court to consider the legislative history. *Hughes*, 734 F.3d at 478. This Court agrees with the bankruptcy court that the legislative history supports the reading that the statute does not apply to alleged DFO liability for FFRs because it was meant for student loans. *In re Dudley*, 582 B.R. at 722. The bankruptcy court noted the phrase "for an obligation to repay funds received as an educational benefit, scholarship or stipend" was added in 1990 as part of the Crime Control Act, largely in response to the 8th Circuit's decision in *U.S. Health & Human Services v. Smith*, 807 F.2d 122 (8th Cir. 1986). *Id.* at 722.

> This section [amending 11 U.S.C. § 523(a)(8)] adds to the list of nondischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends. These obligations are often very sizeable and should receive the same treatment as a "student loan" with regard to restrictions on dischargeability in bankruptcy. *See U.S. Department of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir. 1986).

*Id.* at 723 (quoting Federal Debt Collection Procedures of 1990: Hearing on P.L. 101–647 Before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74–75 (June 14, 1990)). In *Smith*, the debtor was a medical student who accepted scholarship grants under the Physician Shortage Area Scholarship Program ("PSASP"). He did not practice in a physician shortage area, and the Department of Health and Human Services ("HHS") demanded he repay the loan. *Smith*, 807 F.3d at 123. The bankruptcy court and district court found PSASP grants were contingent scholarships and not loans under § 523(a)(8), which at the time excepted from discharged debts "for an educational loan." The Eighth Circuit reversed, finding "[a] loan is no less a loan because its repayment is made contingent." *Id.* at 125. Given this history, the bankruptcy properly court concluded below, "it appears the term was originally intended to encompass financial assistance provided for the purpose of pursuing higher education." *In re Dudley*, 582 B.R. at 723.

The AG's arguments regarding the goals served by its interpretation of deterring abuse and preserving educational funds are also unavailing. The AG argues Congress's two purposes in passing § 523(a)(8) were to preserve education funds and deter abuse. (ECF No. 3 at 38). But the 6th Circuit in *In re Merchant*, which the AG cites as supporting its view, does not define the goals of § 523(a)(8) so broadly. There, the court noted, "[t]he legislative history of the 11 U.S.C. § 523(a)(8) teaches us that the exclusion of educational loans from the discharge provisions was designed to remedy an abuse *by students* who, immediately upon graduation, filed petition for bankruptcy and obtained a discharge of *their educational loans*." 958 F.2d 738, 740 (6th Cir. 1992) (emphasis added). As Dudley suggests in his response, the goals of § 523(a)(8) are specifically "to address the abuse resulting from the circumstance in which a debtor obtains the ability to increase his, her or their children's future income, but seeks to discharge the obligation to pay for the increased earning potential that the debtor or their children obtained." (ECF No. 9 at 18) (citing *In re Campbell*, 547 B.R. at 59-60). DFO liability for FFRs does not fall within the statute's purpose because Dudley is not a student and did not receive any kind of educational benefit from the funds in question. (*Id.* at 19-20) (citing *In re Christoff*, 527 B.R. at 629) (there is a "long-standing principle that exceptions to discharge should be confined to those plainly expressed")). Finally, as Dudley points out, the goals of deterring fraud and embezzlement are already deterred by other provisions of the statute including § 523(a)(4). Dudley notes the AG originally brought a claim against him under § 523(a)(4), but voluntarily dismissed that claim with prejudice after taking his deposition. (ECF No. 9 at 5).

Reviewing the bankruptcy court's decision de novo, this Court finds the statutory language and structure, as well as the legislative history, support the bankruptcy court's interpretation of "educational benefit" in § 523(a)(8)(A)(ii).

## V. CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the bankruptcy court's opinion denying summary judgment to the Ohio Attorney General and granting partial summary judgment to Dudley.

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley
                                                    **ALGENON L. MARBLEY**
                                                    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: March 18, 2020**